UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

AIRFLOW CATALYST SYSTEMS, INC.,

                                 Plaintiffs,            DECISION AND ORDER

-v-

                                                        11-CV-6012 CJS

HUSS TECHNOLOGIES GmbH,

                                 Defendants.

_____

APPEARANCES

| | |
|---|---|
| For Plaintiffs | David J. Edwards, Esq.<br>Harris Beach LLP<br>99 Garnsey Road<br>Pittsford, New York 14534 |
| For Defendant: | Y. David Scharf, Esq.<br>Morrison Cohen, LLP<br>909 Third Avenue<br>New York, New York 10022 |

INTRODUCTION

      This is an action for breach of contract, in which Plaintiff maintains that Defendant sold it defective cement substrates for use in manufacturing catalytic converters. Now before the Court is a motion to dismiss, for *forum non conveniens*, by Defendant, which is headquartered in Germany.[1] For the reasons that follow, the application is denied.

---

[1] 28 U.S.C. § 1404(a) replaced the common law doctrine of *forum non conveniens* with regard to cases in which transfer to another United States District Court is sought, but not with regard to cases in which the alternative forum is in a foreign country. *Crosman Corp. v. Heckler & Koch, Inc.*, No. 08-CV-6034 (CJS), 2008 WL 4347528 at *3 (W.D.N.Y. Sep. 17, 2008).

BACKGROUND

The following facts are taken from the Complaint, declarations, affidavits, and exhibits presently before the Court.[2] Plaintiff manufactures diesel catalytic converters, and is a Delaware Corporation with its corporate office in Rochester, New York, and a manufacturing facility in Wayland, New York. Plaintiff has fourteen (14) employees at its manufacturing facility. Affidavit of Thomas Roberts [#7-1] ("Roberts Aff."), ¶ 2. Defendant makes cement substrates used in manufacturing catalytic converters, and is a German company with its main offices located in Nuremberg, Germany. Defendant employs sales staff in the United States, and maintains offices in Palm Desert, California, and Hartland, Michigan. Plaintiff does not maintain staff or offices outside of the United States.

In August 2009, Plaintiff's Product Development Manager, Thomas Roberts ("Roberts"), attended a trade conference in Dearborn, Michigan, where Defendant had a sales booth manned by its Sales Manager, Alan Pittel ("Pittel"). Pittel provided Roberts with sales materials concerning Defendant's products. In November 2009, Pittel traveled to Rochester to make a sales presentation to Plaintiff. Some of Defendant's other staff in Germany participated in the presentation by conference call.[3] Roberts Aff. ¶ ¶ 4-5. Subsequently, at Plaintiff's request, Defendant sent a sample of its product to Plaintiff in

---

[2] In ruling upon a motion to dismiss for forum non conveniens, the Court may consider the pleadings, affidavits, and exhibits. *See, Kitaru Innovations, Inc. v. Chandaria*, 698 F.Supp.2d 386, 389 (S.D.N.Y. 2010) ("In considering Defendants' motion to dismiss on . . . forum non conveniens grounds, this Court may consider affidavits, affirmations and exhibits submitted in connection with the motion.") (citation omitted).

[3] Defendant identifies the two German employees as Dr. HansJoerg Rembor and Stephen Hess. Holdschuh Reply Aff. at ¶ 7. Defendant downplays Pittel's involvement in the negotiations, since he purportedly was "only a sales representative" and not involved in the design or manufacture of the substrates, while indicating that company representatives in Germany "had direct telephone contact with Airflow representatives with respect to the parties' negotiations." Holdschuh Reply Aff. at ¶ ¶ 5-7

Rochester. In February 2010, Defendant sent additional product samples to Plaintiff. In March 2010, Roberts traveled to Germany, where he met with Defendant's representatives. Roberts Aff. at ¶ 10. In July 2010, Pittel sent Plaintiff a sales proposal and proposed contract, which Plaintiff accepted. In that regard, Plaintiff's representatives signed the contract in Rochester and forwarded it to Michigan, where Pittel apparently signed it. Affidavit of Steffanie LaBarr ("LaBarr Aff.") at ¶ 5; see also, Affidavit of Claus Holdschuh ("Holdschuh Aff.") at ¶ 6 & Ex. 2. The contract, which called for Plaintiff to buy 121 catalytic converter substrates[4] from Defendant, included an international trade term, "EXW," whereby Defendant arranged for shipment to Plaintiff in Wayland, New York,[5] and Plaintiff paid the shipping cost. The contract did not include a forum selection clause or choice of law provision. The contract did include a warranty provision, indicating that Defendant's products would be free from defects "as shipped and packaged at" Defendant's facility in Germany, and that Defendant warranted the product from twelve months from time of delivery. As per the contract, Plaintiff made payment by wire transfer to Defendant's bank in Germany. Defendant shipped seventy-two of the substrates to Plaintiff, but Plaintiff determined that they did not meet the required specifications. Roberts Aff. at ¶ 16.[6]

On November 10, 2010, Plaintiff commenced this action in New York State Supreme Court, Monroe County. The Complaint asserts claims for breach of contract, and breach

---

[4] Plaintiff planned to use the substrates to manufacture catalytic converters for a client in Norway.

[5] According to Plaintiff, "Huss was responsible for arranging transit to the United States (via its normal shipping agent), while AirFlow was obligated to pay for shipping as an expense not included in the cost of manufacture." Pl. Memo of Law [#7] at 4.

[6] Plaintiff maintains that the substrates crack when heated, due to the presence of a contaminant called cristobalite in the cement used to make them. *See*, Affidavit of Dr. Licio Pennisi.

of express and implied warranties. On December 14, 2010, Plaintiff served the Summons and Complaint on Alan Pittel, the Sales Manager at Defendant's office in Hartland, Michigan. On December 15, 2010, Plaintiff served the Summons and Complaint on Phil Surma, the Managing Director at Defendant's office in Palm Desert, California. On January 11, 2011, Defendant removed the action to this Court, on the basis of diversity jurisdiction.

On February 28, 2011, Defendant filed the subject motion to dismiss for forum non conveniens. Defendant maintains that the following facts support its application: 1) Defendant is located in Germany, and it manufactured and shipped the subject product in Germany; 2) Roberts traveled to Germany prior to executing the contract; 3) pursuant to the contract, purchase orders were to be emailed to Defendant in Germany; 4) payment was made through a German bank; 5) three of Defendant's anticipated witnesses are located in Germany; 6) some of the unshipped product remains in Germany; 7) German law should apply to this dispute; and 8) judgments are executed in Germany through a separate court proceeding, and there is a possibility that a German court might refuse to enforce a judgment against Defendant, if it is found that this Court did not have jurisdiction.[7]

On October 27, 2011, counsel for the parties appeared before the undersigned for oral argument.

## DISCUSSION

The legal principles to be applied on a motion to dismiss for forum non conveniens are well settled:

---

[7] As discussed further below, on this last point, Defendant relies on an affidavit from Dr. Friedhelm Nickel, a German lawyer who is apparently a member of the same law firm which attempted to collect the outstanding contract balance from Plaintiff. *See*, LaBarr Aff. at Ex. H.

Forum non conveniens is a discretionary device permitting a court in *rare instances* to dismiss a claim even if the court is a permissible venue with proper jurisdiction over the claim.  *The doctrine authorizes courts to dismiss cases where an alternative forum has jurisdiction to hear the case, and when trial in the chosen forum would establish oppressiveness and vexation to a defendant out of all proportion to plaintiff's convenience.*  Courts may decline to exercise jurisdiction under this doctrine when it is determined that, weighing relative advantages and obstacles to fair trial in the alternative fora, and the practical considerations of which forum will make trial of a case more easy, expeditious and inexpensive, the balance is strongly in favor of the defendant's request for dismissal in favor of a more convenient forum.

In deciding whether to dismiss for forum non conveniens, courts in this Circuit undertake a three-step analysis. First, courts determine the degree of deference due the plaintiff's choice of forum.  Second, courts examine whether there is an adequate alternative forum for the dispute.  Third, courts engage in a balanced assessment of the competing private interests of the parties in the choice of forum, and the public interests of the alternative fora under consideration.  Throughout this analysis, the defendant bears the burden of showing that each step tilts strongly in favor of trial in the foreign forum.  The action should be dismissed only if the chosen forum is shown to be genuinely inconvenient and the selected forum significantly preferable.

1. The Degree of Deference Accorded a Plaintiff's Choice of Forum
Any review of a forum non conveniens motion starts with a strong presumption in favor of the plaintiff's choice of forum.  However, the strength of this presumption, and the degree of deference due the plaintiff's selection, varies with the circumstances. The degree of deference to be accorded the plaintiff's choice of forum is not determinative of the final outcome; rather, it merely re-calibrates the scales for the remaining two steps of the analysis.  The greater the degree of deference to which the plaintiff's choice of forum is entitled, the stronger a showing of inconvenience the defendant must make to prevail in securing forum non conveniens dismissal.  Conversely, where less deference is due, the easier it becomes for the defendant to succeed on a forum non conveniens motion by showing that convenience would be better served by litigating in another country's courts.

A plaintiff's choice of forum is generally entitled to great deference when the plaintiff has sued in the plaintiff's home forum. The reason great deference is generally afforded a plaintiff's choice of its home forum is because it is presumed to be convenient. By contrast, the choice of a United States forum by a foreign plaintiff is entitled to less deference, for the presumption that the choice is convenient is much less reasonable.

Courts must also consider whether the plaintiff's choice of forum appears to be motivated by desire to impose tactical disadvantage on the defendant. Additionally, where indicia of forum shopping are present, the presumption in favor of the plaintiff's choice of forum may not apply, either at all or with full force. Indicia of forum shopping may include: attempts to win a tactical advantage resulting from local laws that favor the plaintiff's case and the inconvenience and expense to the defendant resulting from litigation in that forum.

2. Adequacy of the Alternate Forum
After determining the appropriate degree of deference to accord plaintiff's choice, the court must consider whether an adequate alternative forum exists. The movant bears the burden to demonstrate the adequacy of the alternate forum. Ordinarily, this requirement will be satisfied when the defendant is amenable to process in the other jurisdiction. In rare circumstances, however, where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative, and the initial requirement may not be satisfied. The mere fact that the substantive law in the alternative forum is less favorable to the plaintiffs is not sufficient to show that the alternative forum is inadequate. However, proposed alternative fora have been ruled inadequate where the alternative forum does not permit litigation of the subject matter of the dispute, and where a statute of limitations bars the bringing of a case in a foreign forum that would be timely in the United States.

However, it is the plaintiff that carries the burden of proof when contesting the adequacy of the alternate forum on the basis that the court system is corrupt or inefficient, because considerations of comity preclude a court from adversely judging the quality of a foreign justice system absent a showing of inadequate procedural safeguards. Courts are reluctant to assume the responsibility for supervising the integrity of the judicial system of another

> sovereign nation. Consequently, the 'alternative forum is too corrupt to be adequate' argument does not enjoy a particularly impressive track record.
>
> \*\*\*
>
> 3. Balancing Public and Private Factors
>
> With respect to the third stage of a forum non conveniens analysis, the first set of factors courts must consider are the relative conveniences to the parties of litigating in plaintiff's chosen forum or in the alternative forum proposed by defendant. These factors encompass: the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses and all other practical problems that make trial of a case easy, expeditious and inexpensive. In undertaking this analysis, courts should examine the specifics of the claims: rather than simply characterizing the case as one in negligence, contract, or some other area of law, the court should focus on the precise issues that are likely to be actually tried. However, courts need not undertake to identify all the rights, remedies, and procedures available under the law that would be applied in each forum.
>
> The second set of factors courts must balance are those of public convenience. Public interest factors include: court congestion; the interest of forums in having local disputes decided at home; and, the interest in having issues of law decided by courts of the nation whose law is involved.

*In re Ski Train Fire in Kaprun Austria on November 11, 2000*, 499 F.Supp.2d 437, 441-444 (S.D.N.Y.2007) (emphasis added, citations, footnotes and internal quotation marks omitted), aff'd sub nom *Geier v. Omniglow Corp.*, 357 Fed.Appx. 377 (2d Cir. 2009), cert den. 131 S.Ct. 1491 (2011).

Significantly, "[w]hen an American citizen residing in the United States sues foreign defendants, the entire United States—rather than the particular state in which the plaintiff resides—is considered the home forum for the purposes of a forum non conveniens analysis." *Constellation Energy Commodities Group Inc. v. Transfield ER Cape Ltd.*, No. 10

Civ. 4434(SHS), 2011 WL 3251803 at *3 (S.D.N.Y. Jul. 29, 2011) (*citing Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 146 n. 4 (2d Cir. 2000), other citations omitted).

<u>*Plaintiff's Choice of Forum Is Entitled to Great Deference*</u>

Ordinarily, a plaintiff's choice of forum is entitled to a great amount of deference, where, as in the instant case, he sues in his home forum, and where there is no indication that his choice involved forum shopping or an attempt to gain an improper tactical advantage. However, in this case Defendant maintains that Plaintiff's choice should receive less deference, since Plaintiff is a "corporation which chose to do business abroad." For support, Defendant cites various cases, including *Carey v. Bayerische Hypo-Und Vereinsbank AG*, 370 F.3d 234 (2d Cir. 2004) ("*Carey*"), *Cortec Corp. v. Erste Bank Ber Oesterreichischen Sparkassen AG*, 535 F.Supp.2d 403 (S.D.N.Y. 2008) ("*Cortec*"), and *First Union Nat. Bank v. Paribas*, 135 F.Supp.2d 443 (S.D.N.Y. 2001). In general, though, those cases are factually inapposite. For example, in *Carey*, the Court declined to give strong deference to the Plaintiff's choice of forum in the United States, because although she was a U.S. citizen, she was suing concerning a mortgage loan which she had taken out in Germany while she was living and working in Germany. *See, Carey*, 370 F.3d at 238. Similarly, the facts of the *Cortec* case are completely dissimilar from this one. *See, Cortec*, 535 F.Supp.2d at 405 ("Underlying this action is a lawsuit between an affiliate or subsidiary of plaintiff and an affiliate or subsidiary of defendant concerning a loan that has been recalled. That lawsuit is being litigated in Croatia, where the loan was executed and where both subsidiaries reside and do business. Now, however, the parents are getting involved; and they have brought this all-Croatian fight more than 4000 miles, to New York City.

Neither Plaintiff nor Defendant has any contact with this forum, and the matters in suit did not take place here, either.")[8]

Nonetheless, in *Guidi v. Inter-Continental Hotels Corp.*, 224 F.3d 142, 147 (2d Cir. 2000) ("*Guidi*"), the Second Circuit referred, as part of its forum non conveniens analysis, to "a corporation doing business abroad and [which] can expect to litigate in foreign courts," and indicated that "courts partially discount citizenship when plaintiff does *extensive* foreign business." (emphasis added). Four years after *Guidi*, the Second Circuit issued the *Carey* decision, which Defendant cites. In *Carey*, the Second Circuit seemingly explained its earlier statement in *Guidi*, stating:

> For an individual of modest means, the obligation to litigate in a foreign country is likely to represent a considerably greater obstacle than for *a large business organization – especially one maintaining a business presence in foreign countries*. For this reason, such an individual's choice of the home forum may receive greater deference than the similar choice made by *a large organization which can easily handle the difficulties of engaging in litigation abroad*.

*Carey*, 370 F.3d at 238 (emphasis added). Consequently, it appears that when conducting a forum non conveniens analysis, the forum choice of a corporation, which is large enough that it can easily handle the difficulties of litigating abroad, and especially if it maintains a presence in foreign countries, is entitled to less deference than a forum choice made by individual of modest means. However, the Court does not understand the Second Circuit to have indicated that *every corporation* which does business abroad, no matter how limited,

---

[8] The *Cortec* decision indicates that less deference is given to a plaintiff's chosen forum when the suit does not involve a tort, *see, ICC Industries Inc. v. Israel Discount Bank, Ltd.*, 170 Fed. Appx. 766, 767 (2d Cir. Mar. 16, 2006), but this point does not appreciably change the Court's view that Plaintiff's choice in this case is entitled to relatively strong deference.

is entitled to reduced deference in its choice of forum.[9]  Here, the record indicates that Plaintiff is a corporation which has engaged in exactly two foreign deals: 1) a contract to buy substrates from a German company solicited by the German company's U.S. sales representative; and 2) a contract to sell a limited number of catalytic converters to a company in Norway.  The record further indicates that Plaintiff's manufacturing plant employs just fourteen workers.  Accordingly, the Court does not view Plaintiff as "a large organization which can easily handle the difficulties of engaging in litigation abroad."  Therefore, the Court does not agree with Defendant's contention that Plaintiff "is not entitled to much if any deference for its choice of forum." Def. Reply Memo of Law at p. 4.  Instead, the Court finds that Plaintiff's choice of forum is entitled to a substantial amount of deference, similar or perhaps only slightly less than that which is usually given to an individual U.S. citizen who sues in his home forum.

*Germany Is An Adequate Alternate Forum*

There does not appear to be any reason why Germany would not be an adequate forum to resolve this dispute.  In that regard, it appears that Defendant is subject to being sued in Germany, and that the German courts are capable of handling the matter.  Plaintiff does not dispute that Germany is an adequate forum.  At most, Plaintiff maintains that Defendant has not made a sufficient *showing* that Germany is an adequate alternative forum, since the proof that it initially submitted on this point consists of unsworn letters from

---

[9] Defendant, while acknowledging that the deference due to a plaintiff's choice of forum is analyzed using a sliding scale, nevertheless maintains, essentially, that any corporation doing business abroad should be given less deference.  Defendant does not argue that Plaintiff is "a large organization" nor does it attempt to quantify Plaintiff's financial resources or the amount of business that Plaintiff does abroad.

a German lawyer who apparently represents Defendant.[10] However, Defendant has now resubmitted that information in the form of a sworn affidavit. Therefore, the Court finds, for purposes of this analysis, that Germany would be an adequate alternative forum.

*The Public and Private Factors Do Not Strongly Favor Defendant*

With regard to the public factors identified above, Defendant maintains that three are relevant here: 1) the interest in avoiding problems of applying foreign law; 2) the interest in having disputes decided locally; and 3) the interest in avoiding burdening jurors with cases that do not affect their community. In connection with these points, Defendant maintains that German law must be applied to the parties' dispute, regardless of where it is litigated, and that the "conduct at issue" in the case took place in Germany, and that accordingly, U.S. jurors should not be burdened with the case. The Court, though, disagrees with each of these points.

At the outset, it appears that U.S. law would likely apply to this dispute.[11] New York's choice of law rules, which the parties agree control, are well settled. Specifically,

> [t]he New York Court of Appeals has held, in contract cases, that the "center of gravity" or "grouping of contacts" analysis is to be applied in choice of law situations. [*In re Allstate Ins. Co. (Stolarz)*], 81 N.Y.2d [219,] 226, 597 N.Y.S.2d 904, 613 N.E.2d 936 (1993). The "center of gravity" or "grouping of contacts" choice of law theory allows a court to consider a "spectrum of significant contacts." *Stolarz*, 81 N.Y.2d at 225-26, 597 N.Y.S.2d 904, 613 N.E.2d 936. In *Stolarz*, the New York Court of Appeals listed several factors

---

[10] The German lawyer, Dr. Friedhelm Nickel, generally describes the procedures followed in the German court system, and indicates that this case could be adjudicated there.

[11] Moreover, even where a case will involve the application of foreign law, this factor alone does not require dismissal under the doctrine of forum non conveniens. *See, Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 47 (2d Cir. 1996) ("[I]t is well-established that the need to apply foreign law is not alone sufficient to dismiss under the doctrine of forum non conveniens.") (citation omitted).

> which should be considered in a conflict of law analysis in a contract case. These factors include "the place of contracting, negotiation and performance; the location of the subject matter of the contract; and the domicile of the contracting parties." *Id.* at 227, 597 N.Y.S.2d 904, 613 N.E.2d 936 (citing Restatement (Second) of Conflict of Laws, § 188(2) (1971)).

*Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 583 (2d Cir. 2006). Considering the last of these factors first, the domicile of the parties does not strongly favor either party. Similarly, the location of the subject matter of the contract does not favor either party, since half of the substrates are now in the U.S., and half remain in Germany.

As for where the contract was performed, the Court finds that it was performed in both the U.S. and Germany, since Defendant manufactured the substrates in Germany and shipped them to the U.S., and Plaintiff made payment in the U.S. via an electronic transfer to a bank in Germany. However, Defendant contends that it performed entirely in Germany, for two reasons. First, Defendant argues that the substrates were made there, and second, Defendant argues that the contract indicated that the substrates were being sold "EXW," a term utilized by the International Chamber of Commerce, meaning that the seller delivers the product when he places that goods at the buyer's disposal at the sellers' premises, which in this case was Germany. *See, NML Capital, Ltd. v. Republic of Argentina*, 2011 WL 1533072 at *4 (S.D.N.Y. Apr. 22, 2011); *see also*, Nickel Reply Aff. at ¶ ¶ 26-35. The actual terms of the contract, though, indicate that Defendant's performance under the contract does not end with making the substrates available at its manufacturing plant. Instead, the contract indicates Defendant will deliver the product to Plaintiff in the U.S. *See*, Contract [#4-7] at 2 ("These filters are to be delivered to Wayland, New York."); *id.* ("Quoted prices are

EXW Huss Technologies GmbH Grossroehrsdorf]"); *id*. ("Shipment to arrive in Wayland, New York, USA."); *id*. at 3 ("Quoted delivery times are subject to manufacturing capacity and may change accordingly. Ocean freight would be the standard method of delivery. Airfreight is an alternative, if needed to meet expedited timing."). Consequently, as the contract indicates, "EXW" appears to be a "pricing" term, meaning that Defendant was not responsible for taxes or the cost of shipping. *See*, Contract [#4-7] at 2 ("Quoted prices are EXW Huss Technologies GmbH Grossroehrsdorf]").

As for the remaining *Stolarz* factors, the Court finds that they favor application of New York law, since the contract was executed here, and also largely negotiated here. In that regard, as noted earlier the contract was signed by Pittel and Roberts in the U.S. Moreover, the contract came about because Defendant employed sales staff in the United States, including Pittel, who maintained a sales booth at a trade event in Michigan, presumably for the purpose of soliciting business from U.S. companies. Moreover, Pittel later traveled to Rochester to makes a sales presentation, and directed various communications to Plaintiff by telephone and email. Defendant maintains, though, that certain of Defendant's employees in Germany also participated in telephone calls with Plaintiff's staff, and that their participation was necessary because Pittel does not have technical expertise concerning the manufacturing of the substrates. Defendant also points out that Roberts made a trip to Defendant's offices in Germany as part of the negotiation process. Nevertheless, the Court finds that the contract was primarily negotiated in the U.S. Accordingly, based on the *Stolarz* factors, the Court finds that New York law would apply to the parties' contract dispute. Moreover, the case obviously has a significant connection to the U.S. and to the State of

New York, since it involves a U.S. corporation doing business here. Based on all of the foregoing, the Court finds that the public factors cited by Defendant do not strongly favor dismissal.

As for the private factors, Defendant maintains that the following are relevant: 1) the relative ease of access to sources of proof; 2) the cost for witnesses to attend trial; and 3) the enforceability of a judgment if one is obtained. Def. Memo of Law [#4-1] at 11. Defendant contends that the first of these factors favors Germany, since Defendant's records concerning the substrates, as well as the unshipped substrates, are located there. Defendant states that the second factor also favors Germany, since most of its witnesses, except for Pittel, are located there. Defendant further contends that the third factor favors Germany, since even assuming that Plaintiff obtains a judgment against Defendant in the U.S., Plaintiff will still have to commence a separate action in Germany to enforce the judgment, and there is a chance that a German court would not enforce this Court's judgment.

As for the first two of these factors, the Court finds that they do not strongly favor Defendant, since Plaintiff's documents and witnesses are located here. The Court similarly finds that Defendant has not made a strong showing on the last factor that it cites. On this point, Defendant merely indicates that there is a risk that a German court might not enforce this Court's judgment if it determined that "a German Court already had jurisdiction under private international law," and in that regard, explains that the various factors which would affect such a determination are found in the German Civil Code, ZPO § 328. *See*, Nickel Reply Aff. [#10] at ¶ ¶ 41-45. More specifically, Defendant appears to maintain that under

international law applicable to this transaction, a German court would find, based on the "EXW" term in the contract, that jurisdiction should be in Germany, since that is where Defendant fulfilled the contract. *See*, Nickel, Aff. [#10] at ¶ ¶ 35, 37-38.   However, as discussed above, it appears that Defendant's performance under the contract did not end in Germany, and that "EXW" was primarily a pricing term.  Moreover,  Defendant does not offer an opinion concerning the actual likelihood of a German court refusing to enforce a judgment.[12] *See*, Nickel Aff. [#10] at ¶ 3 ("[T]here is a possibility that any judgment obtained

---

[12]The Court is not at all familiar with German law.  However, the Court's own research on this issue suggests that German courts might not enforce a judgment from this Court if Defendant does not own property in New York State, or if this Court's personal jurisdiction is based on  long-arm jurisdiction, which German courts apparently do not recognize. *See*, John R. Schmertz & Mike Meier, *Supreme Court of German Land Denies Enforcement of Wisconsin Judgment Because, According to German Rules, Wisconsin Federal Court Lacked Jurisdiction Over Any Assets Belonging to German Defendant*, 4 Int'l L. Update 29 (1998) ("Enforcement of a foreign judgment is impermissible if the courts of the foreign state, under German rules, did not have jurisdiction. *Under ZPO Rule 23, only a state where the defendant had assets may acquire jurisdiction over the defendant.* The German defendant, however, has never had any assets in Wisconsin. Even though some commentators argue that, in countries with various legal systems such as the U.S., the relationship to the "country as a whole" should be decisive, the German Court looks only to the law of the individual state whose courts rendered the initial judgment.") (emphasis added); *see also*, Dennis Campbell & Dharmendra Popat, *Enforcing American Money Judgments in the United Kingdom and Germany*, 18 S. Ill. U. L.J. 517, 537 (1994) ("The relevant statute for enforcing American judgments is the German Code of Civil Procedure (the ZivilprozeBordnung), Sections 328, 722, and 733. Section 328 deals with general recognition, while Sections 722 and 733 deal with regulating the procedure for the enforcement of foreign judgments.") (footnote omitted); *see also, id*. at 540-541 ("Under ZPO, Section 328, Paragraph 1, Number 1, recognition of a foreign judgment will be barred where the foreign court had no jurisdiction over the case adjudicated upon according to German law. . . .  The German courts appraise whether criteria upon which jurisdiction is based exist in order to support jurisdiction for a German court.  It is unlikely that the jurisdictional requirements will create much of a problem for American judgments, because German jurisdictional requirements tend to be less rigorous than those of the United States. *However, arguments are forwarded suggesting that, due to the numerous and limitless number of jurisdictions in the United States, American judgments regularly result in recognition being denied  if the defendant has no property in the forum state*.") (emphasis added, footnotes omitted); Otto Sandrock & Matthias K. Hentzen, *Enforcing Foreign Arbitral Awards in the Federal Republic of Germany: The Example of a United States Award*, 2 Transnat'l Law. 49, 78 (1989) ("[I]t must be stressed here that a judgment issued in New York under some kind of transient jurisdiction, *or under a long arm statute*, is unlikely to be judicially recognized in West Germany.") (emphasis added, footnote omitted); Alexander Reus, *Judicial Discretion: A Comparative View of the Doctrine of Forum Non Conveniens in the United States, the United Kingdom, and Germany*, 16 Loy. L.A. Int'l & Comp. L.J. 455, 509 (1994) ("Despite the contentions of the doctrine's proponents, no such excessive jurisdictions are generally permitted under German law as they are under U.S. law through the 'transient rule,' '*long-arm statutes*,' or 'minimum contacts.') (emphasis added).  However, the Court's research is not conclusive, and the parties have not briefed these issues.

by Airflow against Huss in U.S. courts would not be enforced against Huss by German courts.") Accordingly, while there is a possibility that a German court might not enforce any judgment which this Court issues, Defendant has not made a strong showing that this factor warrants dismissing the case.[13]

## CONCLUSION

Defendant's motion to dismiss for forum non conveniens [#4] is denied. Defendant shall file and serve an answer to the Complaint within twenty days of the date of this Decision and Order.

SO ORDERED.

Dated:     November 2, 2011
           Rochester, New York

ENTER:


 /s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

---

[13] Defendant's argument on this point assumes that Plaintiff would attempt to execute such a judgment in Germany, as opposed to attempting to satisfy it from Defendant's assets in the United States. At oral argument, Defendant's counsel indicated that Defendant may not have sufficient assets in this country to satisfy a judgment in Plaintiff's favor, but the Court does not have any evidence before it on this point.